IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM MONROE,<br>    TDCJ-CID #1377782,<br>v.<br><br>JENNIFER SMITH, ET AL. | §<br>§<br>§<br>§<br>§ | C.A. NO. C-10-401 |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND RETAIN CASE**

This civil rights action was filed pursuant to 42 U.S.C. § 1983 by two state prisoners, recognized as husband and wife under common law, alleging that certain Texas state prison officials were violating their right to correspond with each other through the prison mail system.  On February 11, 2011, a memorandum and recommendation was issued recommending dismissal of the claims of co-plaintiff, Leona Ruthie Garner-Monroe, for failure to prosecute.[1]  (D.E. 26).  The Court adopted this recommendation and dismissed any claims by Garner-Monroe.  (D.E. 27).

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  See

---

[1] Although Garner-Monroe was incarcerated at the time suit was filed, she was subsequently released from prison.

42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper.  <u>Ruiz v. United States</u>, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); <u>Martin v. Scott</u>, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's <u>pro se</u> complaint must be read indulgently, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Applying these standards, it is respectfully recommended that the Court retain plaintiff's First Amendment claim against defendants Officer David Diaz and Officer E. Metz.  It is respectfully recommended further that plaintiff's claims alleging denial of access to the courts, privacy violations, and cruel and unusual punishment against the remaining defendants be dismissed with prejudice for failure to state a claim or frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. **JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS

Plaintiff William Monroe is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division, and is currently incarcerated at the McConnell Unit in Beeville, Texas. He filed this action on December 16, 2010, complaining that defendants were restricting his ability to correspond with his common law wife, Garner-Monroe, who was also in prison at that time. (D.E. 1). He named the following individuals as defendants: (1) Jennifer Smith, Huntsville Mailroom Coordinator; (2) David Diaz, the McConnell Unit Mailroom Manager; (3) John Does, the McConnell Unit Mailroom Employees; (4) the Plane State Jail Mailroom Manager; (5) John Does, the Plane State Jail Mailroom Employees; (6) E. Metz, the McConnell Unit Records Manager; (7) John Does, the McConnell Unit Records Employees; (8) the Plane State Jail Records Manager; (9) John Does, the Plane State Jail Records Employees; and (10) the Plane State Jail Chaplin's Office.

A Spears[2] hearing was conducted on February 23, 2011. The following allegations were made in plaintiff's original complaint or at the hearing.

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

On June 14, 1999, plaintiff was arrested for the sexual assault of Garner-Monroe.[3]  He was released.  In 2003, he became involved with Garner-Monroe again, and on November 15, 2005, he was rearrested.  On July 22, 2006, he pleaded guilty to sexual assault of a child, alleged to have occurred on November 7, 1998.  Plaintiff was sentenced to ten years in the TDCJ.

On February 9, 2006, Garner-Monroe was arrested for possession with intent to manufacture and distribute methamphetamine, as well as for leaving the scene of an accident, evading police, and giving false identification.  She has been in and out of prison since that time, having most recently been released from the Plane State Jail in Dayton, Texas, on February 9, 2011.  She is now living with her parents.

Plaintiff contends that, since his confinement in the TDCJ, his correspondence with Garner-Monroe has been reviewed, censored, and often stopped, without explanation.  The first time their correspondence was blocked, plaintiff sought an administrative remedy and was told that there were no records documenting his marriage to Garner-Monroe.  Plaintiff submitted affidavits from himself and Garner-Monroe, and later, he was advised that the TDCJ recognized

---

[3] Plaintiff testified that he is 31 years older than Garner-Monroe; he met her when she was approximately 16 years old.

them as common law spouses. For awhile, he was able to correspond with Garner-Monroe, however, problems corresponding arose again.[4]

In July 2007, both plaintiff and Garner-Monroe were investigated by the Office of the Inspector General. Plaintiff convinced Investigator Susan Poole that he and Garner-Monroe were married. Investigator Poole discovered that certain affidavits, ostensibly filed in Garner-Monroe's name, were forged. Plaintiff and Garner-Monroe resumed corresponding.

Interference with their correspondence arose again in 2010, prompting plaintiff to file this lawsuit. Plaintiff testified that he and Garner-Monroe have a son together and that the interference with the mail prevents them from consulting on issues in a timely fashion. He spoke with the McConnell Unit Mailroom Manager, David Diaz, about the problems with his mail, but Officer Diaz did not investigate the matter or offer a valid explanation. On one occasion, Officer Diaz took letters from plaintiff and assured him that he would see that the letters were delivered to Garner-Monroe; however, she never received that correspondence. Plaintiff asked Officer Diaz about the letters, but he refused to talk to him.

---

[4] Plaintiff admitted that, at certain times while on probation, Garner-Monroe would "disappear." A correctional officer told him that, in those instances, officials were reviewing his mail in an attempt to locate Garner-Monroe. He maintains that officials would still need to advise him of this fact.

Plaintiff also spoke to the McConnell Unit Records Manager, E. Metz, about the correspondence problems, but he too, failed to assist plaintiff.

Plaintiff testified that he is ***not*** on Garner-Monroe's negative mail list, nor she on his. Therefore, he asserts that they should be able to receive correspondence from each other.[5] He does not know why anyone would want to obstruct their mail, but testified that he believes that the named defendants are tampering with it. Since Garner-Monroe's February 2011 release, plaintiff has not had any problems with the mail.

Plaintiff claims that the defendants have conspired to, and successfully have, censored his mail to and from Garner-Monroe in violation of his First Amendment rights. He argues further that he is constitutionally permitted to correspond with Garner-Monroe, and that defendants have hindered his ability to do so, effectively denying him his right of access to the courts. He claims also that censorship violates his Fourth and Fourteenth Amendment privacy rights. Finally, plaintiff claims that the censorship of his mail amounts to cruel and unusual punishment, in violation of the Eighth Amendment.

---

[5] "The Offender Orientation Handbook states that '[o]ffenders shall be denied permission to correspond with persons on their negative mailing list.'" Samford v. Dretke, 562 F.3d 674, 677 n.1 (5th Cir. 2009) (quoting TDCJ, Offender Orientation Handbook 82 (2004), available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf).

## III.  DISCUSSION

### A.    Legal Standard For A Civil Rights Action Pursuant To 42 U.S.C. § 1983.

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

### B.    Plaintiff Cannot Prosecute His Wife's Claims.

Any claims by Garner-Monroe have been dismissed. (D.E. 27). To the extent plaintiff is attempting to bring claims on her behalf, he is forbidden from doing so, because he is not an attorney and has no authority to represent her interests. See Gonzales v. Wyatt, 157 F.3d 1016, 1021 (5th Cir. 1998) ("in federal

7

court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer") (citation omitted); <u>Johns v. County of San Diego</u>, 114 F.3d 874, 876 (9th Cir. 1997) ("while a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'") (citation omitted)); <u>see</u> <u>also</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 228-31(2001) (prison inmates do not have a First Amendment right to provide legal assistance to others).

It is therefore respectfully recommended that the Court dismiss as frivolous or for failure to state a claim, any claims plaintiff purports to raise on behalf of Garner-Monroe.

## C.    Plaintiff's Claims Regarding His Mail Should Be Retained.

Plaintiff claims that defendants have unconstitutionally interfered with the outgoing and incoming mail between him and Garner-Monroe.

In <u>Turner v. Safley</u>, 482 U.S. 78 (1987), the Supreme Court held that restrictions on inmate-to-inmate communications pass constitutional muster only if the restrictions are reasonably related to legitimate and neutral governmental objectives. <u>Id.</u> at 89. The Fifth Circuit has held that the reasonable standard applies equally to both a prisoner's incoming and outgoing mail. <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 824-26 (5th Cir. 1993).

8

In applying the Turner analysis, the Fifth Circuit evaluates the reasonableness of a practice by considering four factors:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right[s] that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."

Mayfield v. Tex. Dep't of Criminal Justice, 529 F.3d 599, 607 (5th Cir. 2008) (quoting Turner, 482 U.S. at 89-91). The Mayfield court further explained "that rationality is the controlling factor, and a court need not weigh each factor equally." Id. (citation omitted). Moreover, the analysis must give due regard to the decisions of prison officials: "'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" Turner, 482 U.S. at 89 (omission and alteration in original); see also Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 863 (5th Cir. 2004) ("the Court is equally cognizant of the inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails").

In Samford, the Fifth Circuit applied the Turner factors to an inmate's claim that the prison's prohibition of him corresponding with his sons violated his First Amendment rights. 562 F.3d at 679. The court concluded that enforcement of the prisoner's negative mail list was reasonable. Id. at 681-82.

In this case, plaintiff testified that he is ***not*** on Garner-Monroe's negative mail list, nor is she on his. He claims further that he personally spoke to the McConnell Unit defendants Diaz and Metz concerning the interference with his correspondence with Garner-Monroe, yet neither Officer Diaz nor Officer Metz offered any explanation as to why his mail was being manipulated. Thus, taking plaintiff's allegations as true, he has successfully alleged a First Amendment claim against these defendants, and it is respectfully recommended that the Court retain these claims, and that service be ordered on Officer Diaz and Officer Metz.

**D.     Plaintiff's Denial Of Access To The Courts Claim Is Without Merit.**

Plaintiff claims that defendants have denied him access to the courts by prohibiting him from corresponding with Garner-Monroe about legal matters and about their son.

Prisoners have a constitutionally protected right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1977)). The State must furnish indigent inmates with pen and paper to draft legal

documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance.  Bounds, 430 U.S. at 824-28.  However, prison officials have considerable discretion in providing legal resources to prisoners.  Lewis, 518 U.S. at 356.  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Id.; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (citing Lewis, 518 U.S. 349).  The Supreme Court explained that "[a]ctual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 349.  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  Id.

In this case, plaintiff failed to allege, let alone establish, that he suffered an actual injury in any nonfrivolous, pending litigation. Indeed, he testified that, except for the instant lawsuit, he has no other legal proceeding pending. He was not prejudiced in his criminal appeal or in any post-judgment proceeding, and in this case, he has been able to access the court as needed. Because plaintiff has not suffered any actual injury in a nonfrivolous proceeding, he fails to state a claim for denial of access to the courts. Thus, it is respectfully recommended that this claim be dismissed.

### E. Plaintiff's Right To Privacy Claim Is Without Merit.

Plaintiff alleges that prison officials have inspected, reviewed, and censored his mail. He asserts that these actions constitute violations of his right to privacy.

The Fourth Amendment's right to be free from unreasonable search and seizure is grounded in, and based upon, a reasonable expectation of privacy. However, the Supreme Court has made clear that, "[a] right of privacy in traditional Fourth Amendment terms is <u>fundamentally incompatible</u> with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984) (emphasis added). Indeed, the "[l]oss of freedom of choice and privacy are

inherent incidents of confinement." Bell v. Wolfish, 441 U.S. 520, 530 (1979); accord Hudson, 468 U.S. at 528.

Plaintiff testified that his mail was often scrutinized when Garner-Monroe was a fugitive in an attempt to locate her. It is well established "that any minimal invasion of privacy is justified by the state's interest in promoting security." Oliver, 276 F.3d at 743. Plaintiff admitted that this scrutiny was "reasonable," but expressed that he should have been told that officials were reviewing his correspondence. Plaintiff's mere objection to the fact that he was not informed of the search does not state a constitutional violation. Moreover, to the extent plaintiff believes that his outgoing mail was tampered with because he did not receive responses to his correspondence, such an allegation fails to provide the basis for a constitutional violation. Damm v. Cooper, 288 F. App'x 130, 132 (5th Cir. 2008) (per curiam) (unpublished) (lack of response from an addressee does not establish whether prison officials interfered with an inmate's outgoing mail) (citing Freeman, 369 F.3d at 860). Plaintiff fails to state a Fourth Amendment privacy violation.

Similarly, plaintiff does not have a Fourteenth Amendment privacy right. Oliver, 276 F.3d at 744-45. Even regulations that impinge upon a prisoner's rights with respect to mail are constitutionally permissible so long as the practice is

13

reasonably related to a legitimate penological interest. Brewer, 3 F.3d at 824. Due to Garner-Monroe's frequent fugitive status, the TDCJ had a legitimate interest in reviewing plaintiff's correspondence with her. Accordingly, it is respectfully recommended that plaintiff's privacy claims be dismissed for failure to state a claim or as frivolous.

### F. Plaintiff's Cruel And Unusual Punishment Claim Is Without Merit.

Plaintiff claims that the interference and censorship of his correspondence with his wife amounts to cruel and unusual punishment. However, the interference for security reasons is reasonable, and therefore, it cannot "shock the conscience" or otherwise amount to an Eighth Amendment violation. See Whitley v. Albers, 475 U.S. 312, 327 (1986) (noting that the Eighth Amendment is "specifically concerned with the unnecessary and wanton infliction of pain...."). Accordingly, it is respectfully recommended that this claim be dismissed for failure to state a claim or as frivolous.

### G. Plaintiff's Claim That Defendants Failed To Investigate His Grievances Is Without Merit.

Plaintiff alleges that prison officials failed to adequately investigate his grievances concerning the censorship of his correspondence with Garner-Monroe. This allegation fails to state a claim. See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) (prisoners do not have a federally protected liberty

interest in having their grievances resolved to their satisfaction; "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless"). Accordingly, it is respectfully recommended that this claim be dismissed.

## H.     Plaintiff's Claim That Defendants Failed To Follow TDCJ Rules And Regulations Is Without Merit.

Plaintiff suggests that defendants failed to follow TDCJ rules regarding the handling of mail. The mere allegation that prison policies were not followed does not state a claim. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (TDCJ-CID's failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimal constitutional requirements are met); accord Samford, 562 F.3d at 681 (citation omitted). Accordingly, it is respectfully recommended that plaintiff's claims regarding any prison officials failure to follow prison mail regulations be dismissed for failure to state a claim or as frivolous.

## IV.  RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the Court retain plaintiff's first amendment claims against David Diaz and E. Metz, and that service be ordered on these defendants. Additionally, it is respectfully recommended that the Court dismiss plaintiff's remaining claims against the

remaining defendants for failure to state a claim or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 2nd day of March 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).